**Shawn E. MORGAN et al., Plaintiff,**

v.

**SERRO TRAVEL TRAILER CO., INC., Defendant and Third-Party Plaintiff,**

v.

**Ray MITCHELL d/b/a Co-op Association of Neodesha, Third-Party Defendant.**

**No. 75–20–C5.**

United States District Court, D. Kansas.

Dec. 30, 1975.

Jan W. Leuenberger, Topeka, Kan., for plaintiff.

David L. McLane, Topeka, Kan., for defendant and third-party plaintiff.

J. Eugene Balloun, Olathe, Kan., for third-party defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This case comes before the Court on plaintiffs' motion for leave to amend the complaint to include a claim against the third-party defendant, Ray Mitchell d/b/a Co-op Association of Neodesha.

The cases arise out of the explosion of a propane stove in a trailer on May 29, 1974, which injured Shawn Morgan. His mother sued on his behalf and was joined by the insurance company which paid a claim arising out of the accident. Plaintiffs' residence was in Kansas, where the accident occurred.

The original complaint, filed February 12, 1975, named four defendants: Serro Travel Trailer Co. (manufacturer of the trailer), S/H Leggett & Co. (manufacturer of the propane tank), Meynall Stove Co. (manufacturer of the propane

stove), and Ray Mitchell d/b/a Co-op Association of Neodesha (filler of the propane tank). All the defendants but Mitchell Co-op were non-Kansas residents. Mitchell Co-op is a Kansas resident.

Because jurisdiction was predicated upon diversity of citizenship, Mitchell Co-op filed a motion to be dismissed from the suit because Mitchell's presence destroyed complete diversity. This point was held moot when the Court, in an order filed September 3, 1975, granted plaintiffs' motion to drop Mitchell Co-op as a party defendant. In that same order, the Court denied defendant Serro's motion to amend its answer to add a cross-claim against Mitchell Co-op, as Mitchell was no longer a party defendant.

On September 30, 1975, the Court granted defendant Serro's motion to serve a third-party complaint against Mitchell Co-op, and Mitchell was brought back into the suit as a third-party defendant. On November 12, 1975, plaintiffs filed a motion requesting that they be allowed to amend their complaint to assert a claim against Mitchell Co-op, the third-party defendant. Having examined the briefs of the parties on the point, the Court is ready to rule on this motion.

■ The main issue facing the Court is whether independent jurisdictional grounds are required when a plaintiff asserts a claim against a third-party defendant. Before proceeding to an analysis of this issue, however, the Court must note that it believes that this case can be treated as the standard case of where A sues B, B brings in C as a third-party defendant, and then A attempts to assert a claim against C. This case does have the added twist that C (Mitchell) was once a defendant in the suit, but the Court feels that this should have no effect upon the legal issues to be resolved. In defendant and third-party plaintiff Serro's brief, much is made of a portion of the Court's earlier order granting plaintiffs' motion to drop Mitchell Co-op as a party defendant, in which the Court stated:

> . . . It is agreed further that the presence of Mitchell Co-op as a party defendant destroys diversity jurisdiction in this case. It is apparently further agreed that Rule 21 of the Federal Rules of Civil Procedure allows the dropping or adding of any non-indispensable party "on such terms as are just." At this point, no party has produced any reason as to why it would be unjust to drop Mitchell Co-op as a party to the suit. Defendant Serro's suggestion that if Mitchell is dropped as a party and then added as a third party defendant on Serro's cross-claim then plaintiffs will be able to obtain relief where they could not have obtained it before is premature and unfounded in light of plaintiffs' announced intention not to attempt to amend their complaint in that regard.

Contrary to Serro's suggestion, the Court did not mean to infer that plaintiff's "announced intention not to attempt to amend their complaint" to assert a claim against a third-party defendant was a *prerequisite* to its ruling. The Court's ruling would have been the same with or without plaintiffs' statement of intention. The Court does not believe that any particular injustice was worked upon Mitchell by dropping him from the lawsuit at that time. Mitchell complains that this motion by plaintiffs violates the "just terms" that the Court found for dropping Mitchell as an original defendant. However, Mitchell can point to no grounds for prejudice and does not convince the Court that the prior proceedings should affect consideration of the simple issue which faces the Court which is, again, whether independent jurisdictional grounds are required for a plaintiff to assert a claim directly against a third-party defendant.

The third-party defendant is certainly correct in indicating that the large majority of cases that have addressed this issue have held that an independent jurisdictional basis *is required* before a

plaintiff will be allowed to assert a claim against a third-party defendant.

The courts have held, with almost complete uniformity, that an amendment of the plaintiff's complaint so as to assert a claim against the third-party defendant destroys the court's jurisdiction, where the plaintiff and the third-party defendant have a common citizenship. [37 A.L.R.2d 1411, 1430–1431 (1954)]

However, when faced with a potentially anomalous trial situation in which Mitchell Co-op, the third-party defendant, is right in the courtroom, yet cannot be directly reached by the plaintiff, the Court is not content to blindly follow the majority rule. The majority position is buttressed largely by cases that are somewhat dated. Further, the majority position has not been unanimously accepted. [See Saalfrank v. O'Daniel, 390 F.Supp. 45 (N.D.Ohio 1975); Davis v. United States, 350 F.Supp. 206 (E.D. Mich.1972); Buresch v. American LaFrance, 290 F.Supp. 265 (W.D.Pa.1968); Olson v. United States, 38 F.R.D. 489 (D.Neb.1965); Myer v. Lyford, 2 F.R.D. 507 (M.D.Pa.1942); Malkin v. Arundel Corp., 36 F.Supp. 948 (D.Md.1941), and Sklar v. Hayes, 1 F.R.D. 415 (E.D.Pa. 1940)]

Rule 14 of the Federal Rules of Civil Procedure states in part:

The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, and the third-party defendant thereupon shall assert his defenses as provided in Rule 12 and his counterclaims and cross-claims as provided in Rule 13.

Thus, Rule 14 does not explicitly require diversity between a plaintiff and a third-party defendant. [Buresch, supra, p. 266; Olson, supra, p. 490] In fact, it has been held that to deny a plaintiff the privilege of bringing his claim against the third-party defendant

. . . would be to defeat the purpose of the rule—which is to avoid circuity of action and to adjust, in a single suit, several phases of the same controversy as it affects the parties. [Sklar, supra, p. 416]

In this connection, Judge Holtzoff has written:

It would seem, perhaps, that a separate basis for jurisdiction and venue should not be needed to justify the assertion of the plaintiff's claim as against a third-party defendant. The prevailing view is, however, to the contrary. This attitude from a practical standpoint, may lead to failure of justice in some cases. Some of the beneficent aspects of third-party practice may be frustrated. As a matter of theory and logic, it would seem reasonable to hold that a third-party claim is ancillary and auxiliary to the main suit for all purposes, and not only as between the third-party plaintiff and the third-party defendant. [Holtzoff, "Entry of Additional Parties in a Civil Action: Intervention and Third-Party Practice," 31 F.R.D. 101, 110 (1962)]

Since in other areas Rule 14 has been read broadly in order to achieve its purposes, it would be inconsistent to read it narrowly in this context. For example, many courts have held that a claim by the third-party defendant against the plaintiff need not be supported by independent jurisdictional grounds. Therefore, it is difficult to see why the converse should not be the case also. As stated by the court in Buresch v. American LaFrance, supra:

The essential purpose, of course, is to avoid multiplicity of suits and piecemeal litigation, and there is no sound reason that the court can see to require more exacting standards in this case than are applied in the many other ancillary proceedings where pendent jurisdiction is allowed without diversity of citizenship. For example, it has been held that diversity need not exist in an action between the third-party

defendant and the plaintiff which is the exact converse of the instant situation. [290 F.Supp. at 267]

*See also Olson v. United States, supra,* at p. 492.

A number of courts have recently extended the concepts of ancillary and pendent jurisdiction to enable them to hear the "whole" case in situations where the main claim was based upon "federal question" jurisdiction. Again, it would be inconsistent not to also hear the ancillary claims in a case founded upon "diversity jurisdiction." The considerations of judicial economy are the same whether the basis for jurisdiction is diversity, or "federal question." As the Third Circuit recently held:

> These considerations seem as applicable to cases in which federal jurisdiction is based upon diversity of citizenship as to federal question cases. [*Jacobson v. Atlantic City Hosp.*, 392 F.2d 149, 155 (3d Cir. 1968)]

More important than the inconsistencies that have developed in the application of the doctrine of ancillary jurisdiction to third-party practice under Rule 14 is the purpose of the Federal Rules of Civil Procedure. As the Supreme Court has written in *United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966):

> Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.

The *Gibbs* decision, just quoted, presents a strong basis for overturning the so-called majority position which places a blanket ban on claims by a plaintiff against a third-party defendant. One recent analysis of the impact of the *Gibbs* decision goes as follows:

> Properly read, *United Mine Workers* reemphasizes the fundamental principle that a federal court has *jurisdictional power* to adjudicate the *whole*

case, i. e., all claims, state or federal, which derive from a common nucleus of operative facts. Thus it is now possible for lower federal courts to reach decisions allowing jurisdiction over some joined claims and parties, which previously would probably have been rejected for lack of subject matter jurisdiction. If *United Mine Workers* does signal such relaxation of the prohibitory rule as to original joinder of claims and parties, then consequently its corollary rule forbidding ancillary jurisdiction of a claim by the plaintiff against the third-party defendant must also be relaxed. [3 Moore's Federal Practice, ¶ 14.27(1), pp. 14–569–570]

The United States District Court for the Eastern District of Michigan concurred in this application of the *Gibbs* rationale in *Davis v. United States, supra,* when it stated that the *Gibbs* decision did not apply only to the *Gibbs* factual situation wherein there was only one plaintiff and one defendant; rather, "[t]he intent of the court was to permit Federal courts to hear controversies within the limits of a 'nucleus of operative fact', . . ." [350 F.Supp. at 208] *See also Saalfrank v. O'Daniel, supra,* pp. 49–53.

The procedural intricacies of this matter cannot be allowed to obfuscate the clear dictates of judicial policy. The Court agrees with Professor Fraser in his conclusion that:

> To hold that a plaintiff may assert a claim against a defendant and in the same action the defendant may recover from a third-party what he must pay to the plaintiff but that the plaintiff cannot directly assert a claim against the third-party after he has been brought into the action emphasizes form over substance. [Fraser, "Ancillary Jurisdiction and the Joinder of Claims in the Federal Courts," 33 F.R.D. 27, 42 (1963)]

An examination of the rationale behind the majority position that conclu-

sively holds that a plaintiff may not assert a claim against a third-party defendant demonstrates that form is being exalted over substance.

The first and foremost argument against allowing a plaintiff to assert a claim directly against a third-party defendant is that this might allow a plaintiff to "collusively" obtain jurisdiction over a party that he could not sue directly. [*See Heintz & Co. v. Provident Tradesmens Bank & Trust Co.,* 30 F.R.D. 171 (E.D.Pa.1962); *Hoskie v. Prudential Ins. Co. of America,* 39 F.Supp. 305 (E.D. N.Y.1941)] This fear was perhaps valid before the Federal Rules were amended in 1946 to preclude a defendant from impleading a third-party solely on the grounds that he might be liable to the plaintiff, but the amendment ended the rationale for this position.

That there may be collusion between the original parties in some cases should not prevent plaintiffs from asserting claims against third-party defendants in all cases. The courts should only dismiss the claim where collusion actually exists. Moreover, the possibility of collusion has diminished since the amendment of Rule 14 in 1946. Now a defendant cannot bring in a third-party who is liable only to the plaintiff; the defendant must assert his own claim against him. Where the defendant pleads such a claim, his motive for asserting it in the original action instead of in a separate action should be immaterial. [*Fraser, supra,* 33 F.R.D. at 42]

■ Since it is unlikely that a plaintiff, who cannot directly reach a third-party, will be able to find a defendant who will not only cooperate, but will also have a cause of action against the third-party, it seems unnecessary to have a blanket ban against plaintiffs who wish to assert claims against third-party defendants without independent jurisdictional grounds. The *Saalfrank v. O'Daniel* court opined at 390 F.Supp., pp. 51–52:

The mere possibility of collusion is also said to be insufficient grounds for barring all claims *ab initio. See* Note, "Rule 14 Claims and Ancillary Jurisdiction," 57 Ya.L.Rev. 265, 275 (1971), where the writer states that:

"[A] 'knee jerk' denial of ancillary jurisdiction in all cases merely because of the fear of collusion is an inadequate response to the central jurisdictional question. * * * To deny ancillary jurisdiction in all situations merely because collusion may be present in a few cases is too severe a prophylactic device, especially in light of [28 U.S.C., § 1359]."

■ The statute mentioned, 28 U.S.C. § 1359, states that a district court shall not have jurisdiction in a case in which any party "has been improperly *or collusively* made or joined to invoke the jurisdiction of such court."

■ This Court takes the position that each case should be looked at individually. If collusion exists, then the plaintiff can be barred from asserting a claim against a third-party defendant without independent jurisdictional grounds. "But the adequate answer to collusion is dismissal under 28 U.S.C. § 1359. Fears of collusion do not justify a wholesale denial of jurisdiction." [*Moore's, supra,* at p. 14–571] This is the position taken by the *Saalfrank* and *Olson* decisions, as well as many commentators. [*See* Wright & Miller, Federal Practice and Procedure, Civil § 1444, p. 231 (1971); *Fraser, supra,* p. 42; *Note,* 57 Va.L.Rev. 265, 274–75 (1971)]

■ It is clear that the dangers of collusion can be handled on a case-by-case basis, and do not mandate a complete bar to plaintiffs asserting claims against third-party defendants in the absence of independent jurisdictional grounds. While there are other arguments in support of the majority position, which the Court is about to examine, it must be kept in mind that they are largely "make-weights", and that

collusion is the *raison d'etre* of the majority position. [*Comment,* 59 Ky.L.J. 506, 513 (1970)]

Another argument in support of the majority position is that a plaintiff should not be able to do indirectly what he cannot do directly, that is, assert a claim directly against a third-party defendant when he could not have sued that party directly because he lacked independent jurisdictional grounds. [*McPherson v. Hoffman,* 275 F.2d 466 (6th Cir. 1960); *Palumbo v. Western Maryland Ry. Co.,* 271 F.Supp. 361 (D.Md.1967)] But as Wright and Miller have pointed out:

> . . . this argument ignores the fact that plaintiff cannot determine whether the third-party will be made a party to the action. The bringing in of the third-party is determined by the original defendant and recognizing ancillary jurisdiction in this context would not encourage plaintiff to initiate actions in the hope that the third-party defendant would be impleaded. [§ 1444 at p. 231]

*See also Saalfrank v. O'Daniel, supra,* p. 51 and *Moore's, supra,* p. 14–570–71.

Further, it is not unusual for a party to use one joinder procedure when he finds that another may not be available to him. For example, a party who is dropped as a plaintiff because his presence destroys complete diversity may always intervene. [*Fraser, supra,* p. 42]

The majority position is also frequently supported by the argument that the basis for bringing in a third-party defendant who lives in the same jurisdiction as the plaintiff is the assumption that the plaintiff will not seek relief from such third-party defendant.

[*Kenrose Mfg. Co. v. Fred Whitaker Co.,* 16 Fed.Rules Serv.2d 369, 371 (4th Cir. 1972)]

However, it has been pointed out that the reasoning behind this argument too narrowly states the grounds for ancillary jurisdiction between the third-party plaintiff and his claim against the third-party defendant. Building ancillary jurisdiction upon ancillary jurisdiction should not be *per se* objectionable.

Ancillary jurisdiction is a much broader concept resting upon multiple reasons of economy and convenience. Thus, it is clearly established that ancillary jurisdiction allows jurisdiction over claims and counterclaims between C. D. [defendant and third-party plaintiff] and E. F. [third-party defendant] even though those claims lack diversity and jurisdictional amount and could not have been brought as original law suits. The same broad principle and result should not be offensive when applied to ancillary jurisdiction between A. B. [plaintiff] and E. F. [*Moore's, supra,* p. 14–571–572]

Yet another argument in support of the majority position is that it would violate the mandates of Rule 82 to allow a plaintiff to assert a claim directly against the third-party defendant in the absence of independent jurisdictional grounds. Rule 82 states, of course, that the Federal Rules of Civil Procedure "shall not be construed *to extend* or limit the jurisdiction of the United States district courts. . . . " Some have argued that to abandon the majority position would be to extend the jurisdiction of the district courts in violation of Rule 82.

However, the use of ancillary jurisdiction to broaden the scope of an action that is already properly before the court should not be considered an extension of federal court jurisdiction. [*Revere Copper & Brass, Inc. v. Aetna Cas. & Sur. Co.,* 426 F.2d 709, 713 (5th Cir. 1970); *Dery v. Wyer,* 265 F.2d 804, 807 (2d Cir. 1959); *Pennsylvania R. R. v. Erie Ave. Warehouse Co.,* 302 F.2d 843, 845 (3d Cir. 1962), and *Lesnik v. Public Indus. Corp.,* 144 F.2d 968, 973 (2d Cir. 1944)]

> While Rule 82 provides that the other rules shall not be construed to extend or limit the jurisdiction of the Federal courts . . . it was not

felt [by commentators on the Federal Rules] that the extension of recognized concepts of ancillary jurisdiction to practice under Rule 14 did any violence to this limitation. [Note, 29 Va. L.Rev. 981, 998 (1943)]

Finally, it has been argued in favor of the majority position that allowing plaintiffs to assert claims directly against third-party defendants in the absence of independent jurisdictional grounds would flood the federal courts with litigation. [*Kenrose v. Whitaker, supra,* p. 371] However, this problem should be viewed against the broader scope of the entire judicial system. Overcrowding in the federal system can be prevented by looking at each case individually and allowing only claims closely related to the central core of facts. In weighing considerations of economy and convenience, the federal court must remember that any claims it does not hear must eventually be heard by another court, and the judicial resources will be expended at that later time. Convenience and economy for the parties involved almost mandates that cases arising out of the same "operative facts" be heard together, if possible.

In reviewing all the arguments for and against allowing a plaintiff to assert a claim directly against a third-party defendant in the absence of independent jurisdictional grounds, the Court has concluded that there are many strong legal and policy reasons supporting the allowance of such claims. Further, the arguments in support of the old majority position do not militate against a careful case-by-case approach which can avoid each of the pitfalls cited. This Court prefers the approach approved in *Saalfrank v. O'Daniel*:

"Rather than stumble over jurisdictional obstacles in the situation, it would be preferable to recognize the trial judge's *power* (in the sense of jurisdiction) to hear all the claims and counterclaims, but permit *discretion* to dismiss the nonfederal claims without prejudice in the event he determines

that their joinder in a single case will unduly complicate or prejudice the trial of the federal claim." Baker, "Toward a Relaxed View of Federal Ancillary and Pendent Jurisdiction," 33 U.Pitt.L.Rev. 759, 776 (1972). [390 F.Supp. at 52]

This approach is also well summarized in *Moore's, supra,* p. 14–570:

. . . *United Mine Workers* can authorize an independent relaxation of the rule against ancillary jurisdiction over plaintiff's amended claims against the third-party defendant. At the outset, the question must be redefined. It should not be a question of pure law posing the choice "either there is ancillary jurisdiction and the court must take it, or there is no ancillary jurisdiction, and the court cannot take it." Instead, since there is jurisdictional power to hear the whole case, the question is one of trial court discretion whether to exercise that jurisdiction, considering all the factors of economy and convenience in the context of federalism. Once this basic redefinition takes place, the traditional reasons given for supporting a rule of flat prohibition do not necessarily disappear. Instead they become factors for the trial court to consider in exercising its discretion.

The Court concludes that plaintiffs may, in appropriate cases, assert claims against third-party defendants and will now turn to the question of whether to exercise its discretion to hear the "whole" of this case. This is a case in which, in the terms of the *Gibbs* decision, the claim of the plaintiff against the third-party defendant arises out of the core of "operative facts" giving rise to both the plaintiff's claim against the defendant, and the defendant and third-party plaintiff's claim against the third-party defendant. The issue at trial will be the causation of the explosion that injured Shawn Morgan. The third-party defendant will be in the courtroom, and it would be anomalous to hold that the

plaintiffs can go against the other defendants who can go against the third-party defendant, but that the plaintiffs cannot proceed directly against the third-party defendant. Obviously, all the defendants will be pointing fingers at each other, and the Court wishes to avoid a situation where two different trials will be held over the same issues—a situation which could result in plaintiff recovering nothing. [*See Hipp v. United States,* 313 F.Supp. 1152, 1155 (E.D.N.Y.1970)]

There is no hint of collusion in this case. The third-party defendant was brought into the case because he might be liable to the third-party plaintiff, not because he might be liable to plaintiff. Concern for the federal dockets does not militate against taking ancillary jurisdiction of this claim. The trial will not be appreciably lengthened by inclusion of this claim; however, a second, separate trial may well be avoided by this action. Broad considerations of economy and convenience to the parties and the courts mandate an exercise of discretion to entertain this claim.

In conclusion, "it is difficult to perceive any countervailing benefits that flow from requiring duplicative trials." [*Baker, supra,* p. 784] All the claims in this case arise out of the same core of "operative facts." The ends of justice are best served, since all the parties will be present in the courtroom anyway, to allow the plaintiffs to assert their claims directly against the third-party defendant.

It is therefore ordered that the plaintiffs' motion for leave to amend their complaint to assert a claim against the third-party defendant will be granted.

It is so ordered.