Geraldine KROGER, Administratrix of
the Estate of James D. Kroger,
Deceased, Appellee,

v.

OWEN EQUIPMENT & ERECTION
COMPANY, a Nebraska
Corporation, Appellant.

No. 76–1187.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 10, 1976.

Decided June 21, 1977.

Rehearing and Rehearing En Banc
Denied Aug. 16, 1977.

Ronald H. Stave, Omaha, Neb., for appellant; David A. Johnson, Omaha, Neb., on the brief.

Warren C. Schrempp, Omaha, Neb., for appellee; Richard E. Shugrue, Omaha, Neb., on the brief.

Before LAY and BRIGHT, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

This case involves the death of a workman assisting in moving a large steel tank. The tank was being moved by a large crane, the boom of which came into contact with high tension electric power lines, resulting in the workman's electrocution. At the time the deceased was 28 years of age with a wife and four children. The plaintiff, his widow, as administratrix of his estate was awarded a jury verdict of $234,756. We affirm.

The crane involved was owned by the Owen Equipment and Erection Company (hereafter "Owen"), and leased by Paxton & Vierling Steel Company (hereafter "Paxton") for heavy lifting. The case was initiated by a bill of complaint filed by plaintiff, an Iowa citizen, against Omaha Public Power District (hereafter "OPPD"), a Nebraska corporation, and Paxton, also a Nebraska corporation. The course of the pleadings thereafter was long and involved and will be found in the Appendix hereto. We note here only that Owen was impleaded as a third-party defendant by OPPD.

The relationship between defendant Owen and Paxton was somewhat involved. Paxton was engaged in the fabrication of structural steel and the manufacture of farm and similar products. It is a non-union plant. To avoid possible labor trouble in "erecting steel on the outside, which is strictly a union proposition," it formed Owen, both corporations having the same headquarters and the same officers, Owen being 100% owned by Paxton. Owen owned two cranes, operated by Fred (father) and David (son) Morrow, both of whom were on Paxton's payroll. Both of them held union cards. It was David who was operating the crime at the time of decedent's death.

After Owen was organized it hired one Harry Flynn, a qualified crane operator and member of the crane operator's union, to be its erection superintendent. It was he who trained Fred Morrow in the use and upkeep of the cranes and it was Fred himself who trained his son on the job. Fred Morrow retired in 1969. Mr. Flynn retired shortly before the accident and was not replaced by a successor. David Morrow then remained the sole operator qualified to operate Owen's big outside cranes. When Paxton required the big cranes, the operators went with the crane and "they ran that crane." Mr. Owen, President of Owen, agreed in his deposition that it "wouldn't do [Owen] a bit of good to own those cranes unless [Owen] had operators for them * * *."

After long and involved pleadings, a summary of which, as we have noted, will be found in the Appendix, the parties had, by trial date, January 12, 1976, been reduced to two: plaintiff Kroger, an Iowa citizen, and

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

defendant Owen, charged to be "a Nebraska corporation," and consistently self-admitted in the pleadings to be such.

So stood the description of the parties until noon on the third day of the trial. At this juncture, defendant Owen elicited from witness Petersen, Secretary of Owen, that Owen's principal place of business was in Carter Lake, Iowa. Having done so, defendant, the same afternoon challenged the jurisdiction of the court on the ground of lack of diversity.

 The court and the plaintiff were taken by surprise because of defendant's pleadings. Plaintiff's amended complaint, filed on November 9, 1973, some two years prior to trial, had unequivocally charged that "Owen Equipment and Erection Co. is a Nebraska corporation with its principal place of business in Nebraska." Defendant had not denied this outright. It had utilized a qualified general denial. It "[a]dmit[ted] that Owen Equipment and Erection Company is a corporation organized and existing under the Laws of the State of Nebraska," and "[d]enie[d] each and every other allegation contained in said Amended Complaint * * *." This form of answer was in violation of Fed.R.Civ.P. 8(b) which provides that "[w]hen a pleader intends in good faith to deny only a part or a qualification of an averment, he shall specify so much of it as is true and material and deny only the remainder."[1] Thus, defendant's admission of part of an averment and denial of the balance in a qualified general denial clearly does not meet the requirements of the Rule quoted. Nor, as

also required by Rule 8(b), does it fairly meet the substance of the averment denied.

Appellant finally admitted on oral argument to us, after close questioning, a point clear from the pleadings, namely, that it had not specifically challenged the diversity jurisdiction of the court at any time during the long course of the pleadings, and particularly had not done so in response to the plaintiff's amended bill of complaint, filed on November 9, 1973, charging Owen to be "a Nebraska corporation with its principal place of business in Nebraska." Owen waited until near the close of the trial to make its challenge. The point had been concealed during the entire period of time since the filing of the amended complaint some two years theretofore. Under similar circumstances, the Third Circuit has held the allegation as to defendant's citizenship to be admitted.[2]

 The District Court rejected the challenge to its jurisdiction, holding, in its Memorandum Opinion, that although no independent basis of jurisdiction existed as to Owen, nevertheless it had discretion under the *Gibbs* case,[3] to exercise its judicial power over the case. It held, in part, that:

> The law in Nebraska is that an independent basis of jurisdiction need not exist in order for plaintiff to assert a claim against a third party defendant. *See Union Bank & Trust Co. v. St. Paul Fire & Marine Ins. Co.*, 38 F.R.D. 486 (D.Neb. 1965); *Olson v. United States*, 38 F.R.D. 489 (D.Neb.1965). Although this view was once the minority view, this Court believes it is correct.

1. *See Kirby v. Turner-Day & Woolworth Handle Co.*, 50 F.Supp. 469, 470 (E.D.Tenn.1943); 2A *Moore's Federal Practice* ¶ 8.23, at 1828 (2d ed. 1975) (hereafter "*Moore's*"); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1266, at 284 (1969) (hereafter "*Wright & Miller*").

2. In *Biggs v. Public Service Coordinated Transport*, 280 F.2d 311 (3d Cir. 1964), the pleader asserted a proper amount in controversy, and, further, that defendant was a New Jersey corporation doing business in Pennsylvania. Defendant's answer specifically denied that the amount in controversy was in excess of the statutory minimum, but the allegation that defendant was incorporated in New Jersey was

only met by a qualified general denial. The *Biggs* court held:

> We cannot for a moment believe that defendant's counsel was denying in good faith that his client was a New Jersey corporation. We think the only fair interpretation of the pleading in this case is that the denial does not run to the allegation of defendant's citizenship. *Therefore, that allegation must be deemed to be admitted.* Fed.R.Civ.P. 8(d). 280 F.2d at 313–14 (footnote omitted; emphasis added).

3. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Properly read, *United Mine Workers* [*v. Gibbs*, 383 U.S. 715 [86 S.Ct. 1130, 16 L.Ed.2d 218] (1966)], reemphasizes the fundamental principle that a federal court has *jurisdictional power* to adjudicate the *whole case*, i. e., all claims, state or federal, which derive from a common nucleus of operative facts . . . [S]ince there is jurisdictional power to hear the whole case, the question is one of trial court discretion whether to exercise that jurisdiction, considering all the factors of economy and convenience in the context of federalism. 3 *Moore's Federal Practice* § 14.27[1], 14–569 to 14–570.

This case is nevertheless novel, in that the third party plaintiff was dismissed. However, having determined that ancillary jurisdiction exists, it is only equitable that the Court now retain jurisdiction of this "pendent" claim.[4] Defendant waited until trial to present its motion to dismiss. Should the Court grant defendant's motion, plaintiff would be left without a cause of action, because the Iowa Statute of Limitations has run.[5] Despite the fact that defendant has exclusive possession of the knowledge of the extent of its own business in Iowa, it remained silent on this issue until more than two years subsequent to the filing of the amended complaint. No reason for the delay has been offered and undoubtedly plaintiff was lulled into believing defendant's principal place of business was in Nebraska. As the matter of sound policy and logic, ancillary jurisdiction existed once and, under the facts presented in this case, this Court must retain jurisdiction.

The problem presented arises in the area of ancillary and pendent jurisdiction. We start, of course, with the proposition that federal courts are courts of limited jurisdiction.[6] However, under the developing doctrines of pendent and ancillary jurisdiction,[7] there has been expansion of federal jurisdiction into areas which ordinarily do not come under the jurisdiction of the federal courts. The limits of this expansion are our immediate concern.

Modern analysis starts with the landmark decision in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).[8] In this case, the plaintiff, a mining superintendent and hauling contractor, was prevented from the performance of his contract by a local union which had forcibly prevented the opening of the mine. Suit was brought in the federal court alleging violation of section 303 of the Labor Management Relations Act,[9] to which was joined a state claim for malicious interference with contract rights. Plaintiff prevailed on both claims, but upon motion for judgment n. o. v. the federal claim was held

---

**4.** The Court is aware that "pendent jurisdiction" refers to state claims joined with federal claims and uses the term here in its ordinary context. (Footnote in original.)

**5.** We express no opinion on this point, it not having been briefed by either party hereto and being only one of the factors to be considered in the exercise of the Court's discretion. (Footnote ours.)

**6.** U.S.Const. art. III, § 2; Act of Sept. 24, 1789, 1 Stat. 73 (Judiciary Act).

**7.** Differentiations of many kinds may be made between the doctrines of ancillary and pendent jurisdiction. As to the utility thereof, *see Aldinger v. Howard*, 427 U.S. 1, 13, 96 S.Ct. 2413, 2419, 49 L.Ed.2d 276 (1976):

Given the complexities of the many manifestations of federal jurisdiction, together with the countless factual permutations possible under the Federal Rules, there is little profit in attempting to decide, for example, whether there are any "principled" differences between pendent and ancillary jurisdiction; or, if there are, what effect *Gibbs* had on such differences.

The historical development of both of these doctrines, which had disparate origins, may be found in Comment, *Pendent and Ancillary Jurisdiction: Towards a Synthesis of Two Doctrines*, 22 U.C.L.A.L.Rev. 1263, 1265–70 (1975) (and cases and articles therein cited); Note, *The Evolution and Scope of the Doctrine of Pendent Jurisdiction in the Federal Courts*, 62 Colum.L.Rev. 1018 (1962); Note, *Rule 14 Claims and Ancillary Jurisdiction*, 57 Va.L.Rev. 265, 267–72 (1971).

**8.** For a discussion of *Gibbs, see* Note, *UMW v. Gibbs and Pendent Jurisdiction*, 81 Harv.L.Rev. 657 (1968).

**9.** 29 U.S.C. § 187.

non-actionable and judgment entered on the state claim, with affirmation by the Court of Appeals following.[10]

The Supreme Court affirmed the assumption of jurisdiction over the pendent state claim.[11] The significance of the *Gibbs* case for our purposes lies in its discarding of the test established in *Hurn v. Oursler*, 289 U.S. 238, 246, 53 S.Ct. 586, 589, 77 L.Ed. 1148 (1933), for pendent jurisdiction, under which pendent jurisdiction was present when "two distinct grounds in support of a single cause of action [12] [were] alleged, one only of which present[ed] a federal question," but not "where two separate and distinct causes of action [were] alleged, one only of which [was] federal in character." In place of the *Hurn* test, the Court held that pendent jurisdiction is present whenever the state and federal claims "derive from a common nucleus of operative fact" to the degree that a plaintiff would "ordinarily be expected to try them all in one judicial proceeding." [13] If, the Court continued, the state claim is so related to the federal claim that there is "but one constitutional 'case',"

there is power to exercise pendent jurisdiction and it is "unnecessarily grudging" to limit the availability of pendent jurisdiction more narrowly than is constitutionally required.[14]

Owen, as noted *supra*, was impleaded by OPPD as a third-party defendant pursuant to Fed.R.Civ.P. 14(a).[15] The provisions of Rule 14(a) governing third-party practice are extremely broad, permitting the third-party defendant to assert against the plaintiff "any claim * * * arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff," and the plaintiff to assert against the third-party defendant "any claim * * * arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff."

Rule 14, however, is silent as to whether independent jurisdictional grounds are required for such claims and thus arises our question. It is to be noted, however, that Rule 14(a) does not by itself extend the

**10.** *Gibbs v. United Mine Workers*, 343 F.2d 609 (6th Cir. 1965).

**11.** In dealing with the merits, however, the Court reversed.

**12.** This phraseology had caused much difficulty in the lower courts due to the metaphysical nature of "cause of action." *See Gibbs, supra*, 383 U.S. at 722–24, 86 S.Ct. 1130; Note, *The Evolution and Scope of the Doctrine of Pendent Jurisdiction in the Federal Courts, supra* note 7, at 1029–30. (Footnote ours.)

**13.** 383 U.S. at 725, 86 S.Ct. at 1138.

**14.** *Id.* at 725, 86 S.Ct. 1130.

**15.** *"(a) When Defendant May Bring in Third Party.* At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. The third-party plaintiff need not obtain leave to make the service if he files the third-party complaint not later than 10 days after he serves his original answer. Otherwise he must obtain leave on motion upon notice to all parties to the action. The person served with the summons and third-party

complaint, hereinafter called the third-party defendant, shall make his defenses to the third-party plaintiff's claim as provided in Rule 12 and his counterclaims against the third-party plaintiff and cross-claims against other third-party defendants as provided in Rule 13. The third-party defendant may assert against the plaintiff any defenses which the third-party plaintiff has to the plaintiff's claim. The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff, and the third-party defendant thereupon shall assert his defenses as provided in Rule 12 and his counterclaims and cross-claims as provided in Rule 13. Any party may move to strike the third-party claim, or for its severance or separate trial. A third-party defendant may proceed under this rule against any person not a party to the action who is or may be liable to him for all or part of the claim made in the action against the third-party defendant. * * *."

jurisdiction of the federal courts.[16] It is clear that many of the claims which Rule 14(a) permits to be joined with the main claim asserted by the plaintiff have been allowed without an independent basis of jurisdiction under the doctrine of ancillary jurisdiction. Professors Wright and Miller state that "[t]he cases on point almost all hold that defendant's claim against a third-party defendant is within the ancillary jurisdiction of the federal courts,"[17] even though there may be no diversity between these parties. *See, e. g., Waylander-Peterson Co. v. Great Northern Ry. Co.*, 201 F.2d 408, 415 (8th Cir. 1953). The courts have also allowed, without an independent basis of jurisdiction, the third-party defendant's claim against the plaintiff, arising out of the same transaction as the plaintiff's main claim.[18] Since much of what we are about to write concerns diversity, we think it not inappropriate to point out that such action against the plaintiff has been held to be within the court's ancillary jurisdiction, even when the main claim is based upon diversity jurisdiction and both the third-

party defendant and plaintiff are citizens of the same state.[19] Thus, in view of the breadth of Rule 14(a), combined with current ancillary and pendent jurisdiction doctrine it is not unusual for courts to adjudicate ancillary claims having no independent jurisdictional basis.[20]

On the other hand, the great numerical majority of cases have held that if the plaintiff asserts a claim against the third-party defendant, as permitted by Rule 14(a), there must be independent grounds for jurisdiction.[21] The older, pre-*Gibbs*, cases, including one from our court,[22] support the proposition with almost complete unanimity,[23] as did the first edition of Prof. Moore's treatise.[24]

■ After the landmark decision in *Gibbs*, however, the underpinnings of the restrictive rule were swept away. Prof. Moore's later edition, following the holding in *Gibbs*, submitted that the matter of accepting jurisdiction should be within the trial court's discretion, arguing trenchantly that:

---

**16.** Fed.R.Civ.P. 82 provides:

These rules shall not be construed to extend or limit the jurisdiction of the United States district courts * * *.

**17.** 6 *Wright & Miller* § 1444, at 223 (footnote omitted).

**18.** *See Revere Copper & Brass Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709 (5th Cir. 1970), but note comments thereon in *Fawvor v. Texaco, Inc.*, 546 F.2d 636, 642 (5th Cir. 1977); *Mayer Paving & Asphalt Co. v. General Dynamics Corp.*, 486 F.2d 763, 772 (7th Cir. 1973), cert. denied, 414 U.S. 1146, 94 S.Ct. 899, 39 L.Ed.2d 102 (1974) (adopting the reasoning of the Fifth Circuit in *Revere Copper*); *L & E Co. v. U. S. A. ex rel. Kaiser Gypsum Co.*, 351 F.2d 880, 882 (9th Cir. 1965).

**19.** *See, e. g., Revere Copper & Brass Inc. v. Aetna Cas. & Sur. Co.*, supra note 18.

**20.** For a summary of the many instances in which the district courts adjudicate ancillary claims having no independent jurisdictional basis, *see* 13 *Wright & Miller* § 3523, at 66–70.

**21.** *See, e. g., Fawvor v. Texaco, Inc.*, supra note 18. *But see, e. g., Morgan v. Serro Travel Trailer Co.*, 69 F.R.D. 697 (D.Kan.1975) (holding that plaintiff, in appropriate cases, may assert a claim against third-party defendant without there being an independent basis of

jurisdiction). The cases pro and con on whether independent jurisdictional grounds are required for plaintiff to assert a claim against third-party defendant are gathered in *Fawvor*, supra, 546 F.2d at 639 n. 7, and in Note, *Rule 14(a) and Ancillary Jurisdiction: Plaintiff's Claim Against Non-Diverse Third-Party Defendant*, 33 Wash. & Lee L.Rev. 796, 798–99 nn. 10–12 (1976).

**22.** *United States v. Lushbough*, 200 F.2d 717 (8th Cir. 1952). We note the holding in *Lushbough* that diversity was required to support a judgment in favor of plaintiff against third-party defendant was an alternative ground of decision, the other ground being that plaintiff was precluded from claiming against third-party defendant by 28 U.S.C. § 2676. In view of developments in the law of pendent and ancillary jurisdiction subsequent to *Lushbough*, we deem it wise to reexamine the position taken by us in that case on the jurisdictional issue at bar.

**23.** *But see L & E Co. v. U. S. A. ex rel. Kaiser Gypsum Co.*, 351 F.2d 880, 882 (9th Cir. 1965); *Olson v. United States*, 38 F.R.D. 489 (D.Neb. 1965); *Myer v. Lyford*, 2 F.R.D. 507 (M.D.Pa. 1942); *Sklar v. Hayes*, 1 F.R.D. 594, 596 (E.D. Pa.1941).

**24.** 1 *Moore's* § 14.02, at 748 (1st ed. 1938).

Properly read, *United Mine Workers* re-emphasizes the fundamental principle that a federal court has *jurisdictional power* to adjudicate the *whole case, i. e.,* all claims, state or federal, which derive from a common nucleus of operative facts. Thus it is now possible for lower federal courts to reach decisions allowing jurisdiction over some joined claims and parties, which previously would probably have been rejected for lack of subject matter jurisdiction. If *United Mine Workers* does signal such relaxation of the prohibitory rule as to original joinder of claims and parties, then, consequently its corollary rule forbidding ancillary jurisdiction of a claim by the plaintiff against the third-party defendant must also be relaxed.

But regardless of jurisdictional developments under Rules 18 and 20, *United Mine Workers* can authorize an independent relaxation of the rule against ancillary jurisdiction over plaintiff's amended claims against the third-party defendant. At the outset, the question must be redefined. It should not be a question of pure law posing the choice "either there is an ancillary jurisdiction and the court must take it, or there is no ancillary jurisdiction, and the court cannot take it." Instead, since there is jurisdictional power to hear the whole case, the question is one of trial court discretion whether to exercise that jurisdiction, considering all the factors of economy and convenience in the context of federalism. Once this basic redefinition takes place, the traditional reasons given for supporting a rule of flat prohibition do not necessarily disappear. Instead they become factors for the trial court to consider in exercising its discretion.[25]

**25.** 3 *Moore's* ¶ 14.27[1], at 14–569 to 14–570 (footnotes omitted; emphasis in original).

In *Kenrose Mfg. Co. v. Fred Whitaker Co.,* 512 F.2d 890, 893–94 (4th Cir. 1972), Judge Soboleff summarized the arguments often given in support of the majority view that independent jurisdictional grounds are required in order for plaintiff to assert a claim against third-party defendant:

Several supporting reasons have been advanced by courts holding the majority view on this question. Among them are that: (1) plaintiff should not be allowed, by an indirect route, to sue a co-citizen under diversity jurisdiction when he is not permitted to sue that party directly; (2) the majority rule prevents collusion between plaintiff and defendant to obtain federal jurisdiction over a party who would otherwise not be within the court's reach; (3) the rule which generally does not require diversity as between plaintiff and third-party defendant proceeds on the assumption that the plaintiff is seeking no relief against the third-party defendant; and (4) federal dockets are so overcrowded that the federal courts should not reach out for state law based litigation. [Footnotes omitted.]

Professor Moore has incisively criticized these arguments in his treatise. *See* 3 *Moore's* ¶ 14.-27[1], at 14–570 to 572. *See also Morgan v. Serro Travel Trailer Co., supra,* 69 F.R.D. at 702–04.

In response to the argument that plaintiff should not be able to do indirectly what he cannot do directly, Professor Moore replies:

[W]hy shouldn't A.B. [plaintiff] be able to do it indirectly? A.B. took his chance in suing C.D. [defendant] alone in the federal court.

It was C.D.'s choice, not A.B.'s, to bring in E.F. [third-party defendant], and now that E.F. is before the court, judicial economy and convenience may dictate that the court dispose of the whole case by allowing all claims deriving from a common nucleus of operative fact.

3 *Moore's* ¶ 14.27[1] at 14–570 to 571 (footnote omitted).

The argument that the majority rule prevents collusion has been termed "the *raison d'etre*" of that rule; the other arguments being described as "largely 'make-weights'." *Morgan, supra,* 69 F.R.D. at 702–03. Professor Moore states, and we agree, that 28 U.S.C. § 1359, which provides that "[a] district court shall not have jurisdiction of a civil action in which any party * * * has been improperly or collusively made or joined to invoke the jurisdiction of such court," is an adequate answer to the specter of collusion. 3 *Moore's* ¶ 14.27[1], at 14–571. "Fears of collusion do not justify a wholesale denial of jurisdiction." *Id.*

The third argument given in support of the majority rule rests on an overly narrow view of ancillary jurisdiction. Professor Moore puts it this way:

Ancillary jurisdiction is a much broader concept resting upon multiple reasons of economy and convenience. Thus, it is clearly established that ancillary jurisdiction allows jurisdiction over claims and counterclaims between C.D. [third-party plaintiff] and E.F. [third-party defendant] even though those claims lack diversity and jurisdictional amount and could not have been brought as original law suits. The same broad principle

The solution to the problem presented as to the District Court's retention of jurisdiction in the case at bar is clearly outlined in *Gibbs*. That decision enunciated a two step process for the resolution of the ancillary-pendent jurisdiction problem: First, the determination of whether or not there is *power* in the federal courts to hear the whole matter. If there is, the Court continues, "That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants * * * *."[26]

At the time the plaintiff amended her complaint to assert a claim against Owen there is no question but that the court had jurisdiction over plaintiff's claim against OPPD and OPPD's third-party claim against Owen.[27] But the question presented is whether the court also had power over the plaintiff-Owen claim.

Within the framework of the *Gibbs* decision, Kroger's claim against Owen arises out of the core of "operative facts" giving rise to both Kroger's claim against OPPD and OPPD's claim against Owen. All parties were before the court and it is both paradoxical and anomalous to hold in this situation that, although Kroger can go against OPPD which can go against Owen, and Owen may proceed against Kroger, Kroger cannot proceed against Owen. This result is not demanded by Rule 14 and has its origins in the midst of the precedents of earlier days and crystallized concepts that cannot stand the light of searching modern examination.

■ It is an over-simplification of the result we seek to cast the problem in terms of black and white, that is, jurisdiction or no jurisdiction. The matter is broader than that. Once the court has before it all of the parties to the controversy, sharing common and interrelated facts, it has power in the jurisdictional sense to dispose of the case. To say, in a modern court, under modern rules,[28] that a third-party defendant may sue a plaintiff of the same state, but not the converse, is a monument to the triumph of rule over reason, "a step backward to the time when piecemeal litigation, tactical maneuvering by procedural devices, inconvenience to litigants, duplication of litigation in different courts, and a resulting waste of judicial and litigant time and resources were the hallmarks of formalistic rules of civil procedure."[29]

---

and result should not be offensive when applied to ancillary jurisdiction between A.B. [plaintiff] and E.F. If E.F. had voluntarily entered the suit as a non-indispensable defendant by intervention under Rule 24(a), there clearly can be ancillary jurisdiction over the claims between E.F. and A.B. The same result should be obtained whether E.F. enters voluntarily under Rule 24 or involuntarily by C.D.'s impleader under Rule 14. In brief, there should be no rule forbidding building one ancillary jurisdiction on another. *Id.* at 14–571 to 572 (footnotes omitted).

The fourth argument in support of the majority rule, that federal courts are too busy to "reach out for state law based litigation," rests upon a parochial view of federalism. "If federal courts refuse to use conceptual tools to dispose of all related claims with the greatest economy and convenience, the federal courts then add to the total ineconomy and inconvenience which litigants must suffer to obtain justice on the merits of their claims." *Id.* at 14–572 (footnote omitted).

**26.** 383 U.S. at 726, 86 S.Ct. at 1139 (footnote omitted).

**27.** The power as to the Kroger-OPPD claim rested upon diversity, and as to the OPPD-Owen third-party claim, the court had ancillary jurisdiction. *Waylander-Peterson Co. v. Great Northern Ry. Co., supra*; 6 *Wright & Miller* § 1444, at 223 (quoted *supra* at p. 11).

**28.** "Under the [Federal Rules of Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged." *Gibbs, supra*, 383 U.S. at 724, 86 S.Ct. at 1138 (footnote omitted).

**29.** Note, *Rule 14 Claims and Ancillary Jurisdiction, supra* note 7, at 289.

Owen contends that the recent Supreme Court decision, *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), supports its contention that the District Court was without power to exercise jurisdiction over Kroger's direct claim against it. We disagree.

The *Aldinger* court's holding was a narrow one:

The judicial power is there. Whether or not to use it answers to no *ipse dixit*. The question is whether to exercise that power, "considering all the factors of economy and convenience in the context of federalism." [30]

Thus remains the exercise of discretion. And it is for this reason, we are convinced, that we are warned, from the earliest cases to the latest, that there can be no blanket rule governing all cases, no per se dogma to serve as an easy substitute for thought.

As we indicated at the outset of this opinion, the question of pendent-party jurisdiction is "subtle and complex," and we believe it would be as unwise as it would be unnecessary to lay down any sweeping pronouncement upon the existence or exercise of such jurisdiction. [31]

The factors governing the exercise of discretion were expressed in *Gibbs* to be "judicial economy, convenience, and fairness to litigants." [32] The satisfaction here of the first two requirements requires no exegesis. It is upon the element of fairness that we shall speak. The defendant before us has connived for himself an unfair advantage. But what he has overlooked in all of this is the court's exercise of discretion in terms of fairness. It is not without significance that well prior to *Gibbs* the discretion of the trial court was relied upon in denying belated challenges to jurisdiction in situations of oppression. [33] In the *Di Frischia* case, after a series of pleadings, preparations for trial, and a stipulation of diversity, a defendant sought to amend its answer on the eve of trial, once again bringing up the matter of jurisdiction. The District Court dismissed the action, but the Court of Appeals reversed, resting decision on the discretion vested in the trial court and stating that "[a] defendant may not play fast and loose with the judicial machinery and deceive the courts." [34]

All that we hold is that where the asserted basis of federal jurisdiction over a municipal corporation is not diversity of citizenship, but is a claim of jurisdiction pendent to a suit brought against a municipal officer within [28 U.S.C.] § 1343, the refusal of Congress to authorize suits against municipal corporations under the cognate provisions of [42 U.S.C.] § 1983 is sufficient to defeat the asserted claim of pendent-party jurisdiction. *Id.* at 17–18 n. 12, 96 S.Ct. at 2422. The *Aldinger* court carefully limited its decision to the context of claims brought under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983:

[W]e decide here only the issue of so-called "pendent party" jurisdiction with respect to a claim brought under §§ 1343(3) and 1983. *Other statutory grants and other alignments of parties and claims might call for a different result.*

*Id.* at 18, 96 S.Ct. at 2422 (emphasis added). The instant case presents an alignment of parties and claims significantly different from that presented in *Aldinger*. In *Aldinger*, the municipal corporation over which plaintiff sought to have the court assert pendent jurisdiction, was a "new party * * * not otherwise subject to federal jurisdiction." *Id.* The impleading of such a party, presents "a more serious obstacle to the exercise of pendent jurisdiction than if parties already before the court are required to litigate a state-law claim." *Id.* In the instant case, Owen was already before the court on OPPD's third-party claim, a state law claim within the court's ancillary jurisdiction. *See* p. 422 and note 27, *supra*.

30. 3 *Moore's* ¶ 14.27[1], at 14–570.

31. *Aldinger, supra*, 427 U.S. at 18, 96 S.Ct. at 2422.

32. 383 U.S. at 726, 86 S.Ct. at 1139.

33. *See Di Frischia v. New York Cent. R.R.*, 279 F.2d 141 (3d Cir. 1960); *Klee v. Pittsburgh & W.Va. Ry.*, 22 F.R.D. 252 (W.D.Pa.1958).

34. 279 F.2d at 144. The *Di Frischia* court held in part:

We are equally cognizant of our holding in *Hospoder v. United States*, 3 Cir., 1953, 209 F.2d 427, 429, where we stated:
"It is axiomatic that jurisdiction may not be conferred or waived by the parties and that courts at every stage of the proceedings may and must examine into its existence."
However, the instant case is governed by a different line of authority that is equally well recognized. In *Young v. Handwork*, 7 Cir., 1949, 179 F.2d 70, 16 A.L.R.2d 825, certiorari denied 1950, 339 U.S. 949, 70 S.Ct. 804, 805, 94 L.Ed. 1363, we have a similar state of facts, for after raising the question of lack of diversity in its answer the defendants omitted such question from their amended motion and in open court admitted the facts in plaintiff's complaint. Following determination by the court on the merits, the defendant once again attempted to raise the issue, but the court denied leave to file the amendment and the action was sustained by the court of appeals. Similarly, in the instant case the defendant had its opportunity to have the

A situation similar in principle and with similar results in the retention of jurisdiction is found in *Murphy v. Kodz*, 351 F.2d 163 (9th Cir. 1965). There the plaintiff's decedent was killed in a mid-air collision, plaintiff bringing action in state court against one Shupe and other parties. Mr. Shupe, alleging that he was an officer of the Forest Service acting in his official capacity at the time of the accident, had the case removed to the District Court, pursuant to 28 U.S.C. § 1442(a)(1). No head of federal jurisdiction was alleged as to the remaining defendants. The trial resulted in a judgment in favor of Shupe, but the jury was unable to agree on the liability of the other defendants. As to them, a new trial resulted in plaintiff's favor, whereupon defendants moved to remand the case to the state court, arguing that the federal court had lost further jurisdiction of the case upon entry of the judgment for Shupe, who was the sole party entitled to invoke that court's jurisdiction.

The motions were denied by the District Court. The Ninth Circuit affirmed, finding an analogy "in the penumbral area of federal jurisdiction, so-called ancillary or pendent jurisdiction," citing, among other cases, *Hurn v. Oursler, supra*. After a review of the authorities applicable to the particular area of jurisdiction at bar, which, as the court noted, has analogies to pendent and ancillary jurisdiction, the court stated that the District Court had discretion in the premises and concluded in language equally applicable to the case before us:

> We need not rest our decision on any claim of judicial economy, for we are impressed that no opportunity for exercise of that discretion was accorded the District Court by motion to remand at the close of the federal facet of the case. That the District Court proceeded with the nonfederal claims does not, in this instance, afford a ground for reversal: Failure of the appellants to bring to the attention of the court considerations requiring an exercise of discretion estops them from asserting that privilege after decision on the merits. [Citing cases.] To hold otherwise would encourage litigants to wager on their success on the merits, and if they lost, permit them to call the contest a nullity.[35]

■ In the case before us, the District Court stood squarely upon its discretionary powers in the premises, relying on *Gibbs*. Defendant Owen attacks the applicability of this doctrine to the case at bar, asserting that the dismissal of the plaintiff's claim against OPPD before trial limits the discretion of the District Court. We do not so conclude. It is but one factor, among many others, to be considered.[36]

issue heard and to present its position but chose to admit the allegations of plaintiff's complaint. Thereafter it fully participated in the appropriate discovery and pretrial procedures preparatory to trial of the action on the merits. Having done so, a further attempt to amend its answer to return to its previous defense of lack of diversity could certainly *not be made as of right*. Allowance of such an amendment under the circumstances would be an abuse of discretion. Cf. *Klee v. Pittsburgh & West Virginia Railway Co.*, D.C.W.D.Pa.1958, 22 F.R.D. 252. A defendant may not play fast and loose with the judicial machinery and deceive the courts.

*Id. See also Biggs, supra* note 2. *Di Frischia* is commented upon in C. Wright, *Handbook of the Law of Federal Courts* § 8, at 18–19 (3d ed. 1976); Stephens, *Estoppel to Deny Federal Jurisdiction—Klee and Di Frischia Break Ground*, 68 Dick.L.Rev. 39 (1963); 15 U.Miami L.Rev. 315 (1961); 7 Utah L.Rev. 258 (1960).

**35.** 351 F.2d at 168.

**36.** *See* 6 *Wright & Miller* § 1444, at 234–237, and cases therein cited. In language that is strikingly applicable to the case at bar, Professors Wright and Miller stated that "if there has been a substantial commitment of the court's or litigant's resources prior to the termination of the main claim, dismissal of the Rule 14 claim will run counter to the rationale justifying ancillary jurisdiction and third-party practice." *Id.* at 237. *See also Dery v. Wyer*, 265 F.2d 804, 808 (2d Cir. 1959):

> Generally, in a diversity action, if jurisdictional prerequisites are satisfied when the suit is begun, subsequent events will not work an ouster of jurisdiction. [Citing cases.] This result is not attributable to any specific statute or to any language in the statutes which confer jurisdiction. It stems rather from the general notion that the sufficiency of jurisdiction should be determined once and for all at the threshold and if found to be present then should continue until final disposition of the action. * * *

But beyond that, however, there are other considerations. By subtle and adroit pleading the defendant has gained a substantial advantage. If the trial goes well, it can keep the jurisdictional point hidden. If the trial seems to be going badly or, indeed, if it loses on the merits, it asserts that it can even then challenge jurisdiction and successfully, so it argues, since it insists that it is clear to all that jurisdiction may be challenged by anyone at any time.[37]

■ But plaintiff overlooks the application of the *Gibbs* doctrine to ancillary litigation. The District Court had judicial *power* over the case initially and we find no abuse of its discretion in the continued exercise of that power. But beyond that, whether the court's discretion was abused or not in its retention of the cause, defendant's conduct estops it from asserting abuse of discretion, not only under the teachings of *Murphy v.*

*Kodz, supra,* but also under the most elementary considerations of judicial fairness. "Despite the fact that defendant has exclusive possession of the knowledge of the extent of its own business in Iowa, it remained silent on this issue until more than two years subsequent to the filing of the amended complaint. No reason for the delay has been offered * * *."[38]

The doctrine of the perpetual availability of jurisdictional challenge furnishes no sanctuary to appellant in the light of such conduct.

Proceeding to the merits, the case was submitted to the jury under, among others, the following instruction:

A plaintiff may proceed in a case under more than one theory of law. In this case, plaintiff alleges two theories, as subsequently explained, only one of which he need prove in order to recover:

Considerations of policy * * * accord with our conclusion.

**37.** Distinguished scholars have gone so far as to suggest, with respect to the dogma of "challenge jurisdiction any place any time" that we are becoming involved in mere "fetishism."

If the record fails to disclose a basis for federal jurisdiction, the court not only will but must refuse to proceed further with the determination of the merits of the controversy unless the failure can be cured. This is true whether the case is at the trial stage or the appellate stage, and whether the defect is called to the court's attention "by suggestion of the parties or otherwise." Probably it would be possible to fill the rest of this book with citations and thumbnail abstracts of cases illustrating the application of this principle.

This is established practice. Is it fetichism [sic]? Or is it grounded on solid considerations of policy and of legislative and judicial statesmanship? Why should not a party who has invoked federal jurisdiction, or failed seasonably to object to it, be held to have waived any defect, or be estopped from asserting it?

P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, *Hart & Wechsler's The Federal Courts and The Federal System* 835–36 (2d ed. 1973). Consider also the comments of the distinguished American Law Institute reflecting the disturbance, not of only of distinguished scholars, but of many courts:

At the present time and throughout the history of the federal judicial system, it has been possible for either party to raise, or for the court on its motion to consider, a question of jurisdiction over the subject matter at any stage in the course of litigation. *See, e. g., Mansfield, Coldwater & Lake Mich. Ry. v. Swan,* 111 U.S. 379 [4 S.Ct. 510, 28 L.Ed. 462] (1884). Even the party who has invoked jurisdiction may subsequently challenge it if the result of a trial on the merits is unfavorable. *See, e. g., American Fire and Cas. Co. v. Finn,* 341 U.S. 6 [71 S.Ct. 534, 95 L.Ed. 702] (1951). And a wily defendant may conceal a known jurisdictional defect until the period of the statute of limitations has run, then obtain dismissal, and achieve total immunity from suit. Some decisions indicate that he may even do this by controverting jurisdictional facts previously alleged or admitted. *E. g., Page v. Wright,* 116 F.2d 449 (7th Cir. 1940) [*Ramsey v. Mellon Nat'l Bank & Trust Co.,* 350 F.2d 874 (3d Cir. 1965)]. *But see Di Frischia v. New York Cent. R.R.,* 279 F.2d 141 (3d Cir. 1960).

As many commentators have noted, *e. g.,* 1 *Moore Federal Practice* ¶ 0.60(4) (2d ed. 1948), this fetish of federal jurisdiction is wholly inconsistent with sound judicial administration and can only serve to diminish respect for a system that tolerates it. Some effective limitation on the raising and consideration of jurisdictional issues seems long overdue.

American Law Institute, *Study of the Division of Jurisdiction Between State and Federal Courts* 366 (1969).

**38.** District Court Memorandum Opinion, quoted more fully at pp. 419–420, *supra.*

1. That the crane supplied by defendant was unsafe for the purpose it was intended.

2. That the crane operator was in the employment of defendant and that defendant is therefore liable for the negligent acts of the crane operator.

■ There was no error in this instruction. It is well established that the trial court has the duty to submit to the jury all issues raised by the pleadings which have evidentiary support. *Flentie v. American Community Stores Corp.*, 389 F.2d 80, 82 (8th Cir. 1968) (applying Iowa law); *Campbell v. Martin*, 257 Iowa 1247, 136 N.W.2d 508, 511 (1965). In addition the court properly instructed the jury on the establishment of negligence, causation, and damage.

■ Here there was ample and controverted evidence submitted on each of the theories of the plaintiff. The first issue presented by the court in its instructions related to the safe or unsafe condition of the crane concededly owned by defendant Owen. On this issue plaintiff's expert testified, as to described safety devices, that

Well, with these safety devices available, I just don't think it is right to put a product out anywhere for rent or use for anybody unless it is equipped with it. You cannot assume, for example, that whoever it goes to are necessarily trained in safety and are going to take all the precautions and when a safety device is available and is being used in the industry, it is my opinion that these cranes and booms should be so equipped.

One of the issues most vigorously argued at trial was whether the crane operator, David Morrow, was a servant of Paxton or of defendant Owen, loaned by Paxton to Owen for this particular job. What the court was faced with was thus the notoriously complex "borrowed servant" problem,[39] that is, the problem of vicarious liability between the general employer, from whose employ the servant came, or the special employer, who was utilizing at the time the servant so obtained. On this issue, the trial court instructed the jury, essentially, that it must decide whether David Morrow was, at the time of the accident, acting as Owen's servant, and that the test of agency as between the general and the special employer was which had the right to control the manner of performance of the work being done. The evidence as to control, as well as other facets of the employment relation, was conflicting and presented a jury question. The instructions, read in their entirety in the light of the unique facts adduced as to Morrow's employment and duties, summarized *supra*, fairly presented the controlling issue to the jury and we find no error therein. *Bengford v. Carlem Corp.*, 156 N.W.2d 855, 863 (Iowa 1968); *Houlahan v. Brockmeier*, 258 Iowa 1197, 141 N.W.2d 545, 548 (1966); *Anderson v. Abramson*, 234 Iowa 792, 13 N.W.2d 315 (1944); *Kanipe v. Grundy County Rural Electric Co-op*, 231 Iowa 187, 300 N.W. 662, 665 (1941).[40]

We find no merit in the Workmen's Compensation issue as to Kroger. He was in no sense an employee of Owen, borrowed or direct.

Affirmed.

## APPENDIX

The case was commenced by a complaint filed on November 24, 1972, by Geraldine Kroger, an Iowa citizen, administratrix of the estate of James D. Kroger, deceased, against the Omaha Public Power District (hereafter "OPPD"), a public corporation

---

**39.** "The law that defines or seeks to define the distinction between general and special employers is beset with distinctions so delicate that chaos is the consequence. No lawyer can say with assurance in any given situation when one employment ends and the other begins. The wrong choice of defendants is often made, with instances, all too many, in which justice has miscarried."

Cardozo, *A Ministry of Justice*, 35 Harv.L.Rev. 113, 121 (1921).

**40.** Appellee relies also on *Nepstad v. Lambert*, 235 Minn. 1, 50 N.W.2d 614 (1951), citing Smith, *Scope of the Business: The Borrowed Servant Problem*, 38 Mich.L.Rev. 1222 (1940), commented upon in 28 Ohio St.L.J. 550, 553–57 (1967).

existing under the laws of the State of Nebraska, and having its principal place of business in Omaha, for negligence in the construction, maintenance and operation of its power transmission line alleged to have been the proximate cause of plaintiff's decedent's death. The Paxton & Vierling Steel Company (hereafter "Paxton"), also a Nebraska corporation, was made a party defendant "for the sole and only purpose of determining its rights under the Workmen's Compensation Act, if any * * * ." The parties agree that Paxton was dismissed out of this phase of the action, appellant stating, "because of a jurisdictional defect." The order with respect thereto is not found in the record before us. OPPD thereafter filed a third-party complaint against Paxton and "Owen Construction Co., Inc." (hereafter "Owen Construction"). Shortly thereafter, OPPD filed a motion for dismissal of Owen Construction, having ascertained that its proper corporate name was Owen Equipment and Erection Co. (hereafter "Owen Equipment"). The motion was granted and the court ordered that Owen Construction, "an Iowa corporation," be dismissed with prejudice and granted OPPD permission to file an "Amended Third-Party Complaint naming Owen Equipment and Erection Co., a Nebraska corporation, as an additional Third-Party Defendant * * * ." OPPD's amended third-party complaint against Owen Equipment, "a Nebraska corporation," was subsequently filed. This is the Owen corporation remaining in the case.

Owen Equipment's answer to OPPD's amended third-party complaint stated as follows:

1. Admits that Owen Equipment and Erection Company is a corporation organized and existing under the laws of the State of Nebraska.

2. Denies each and every other allegation contained in said Third-Party Complaint except those allegations which would be in the nature of admissions against the interest of the third-party plaintiff.

Plaintiff Kroger moved also for an order permitting her to add as a party defendant Owen Equipment, "a Nebraska corporation." Plaintiff filed such amended complaint against Owen Equipment, on November 9, 1973, describing it as "a Nebraska corporation with its principal place of business in Nebraska." Owen Equipment's answer thereto stated in pertinent part that it:

1. Admits that Owen Equipment and Erection Company is a corporation organized and existing under the Laws of the State of Nebraska.

2. Denies each and every other allegation contained in said Amended Complaint, except those allegations which would be in the nature of admissions against the interest of the plaintiff.

OPPD had moved for summary judgment on October 30, 1973. On September 9, 1975, this court affirmed the District Court's judgment in favor of OPPD against the plaintiff, dismissing OPPD, a Nebraska corporation, from the cause. *Kroger v. Omaha Public Power District*, 523 F.2d 161 (8th Cir. 1975).

Shortly thereafter, Owen Equipment's motion for summary judgment, which had been filed in September of 1974 was heard and denied by the court. This motion, by Owen Equipment, "a Nebraska Corporation," raised no issue of jurisdiction, made no point as to lack of diversity, nor did it make any mention of where Owen Equipment's principal place of business might be. The motion was denied on November 14, 1975, and trial commenced on January 12, 1976.

On January 13, 1976, during the trial, Owen Equipment filed an answer asserting that the court lacked subject matter jurisdiction, but failing to specify lack of diversity as the reason therefor. On January 14, 1976, after having raised lack of diversity, Owen Equipment moved for leave to file another amended answer which like the answer of January 13, asserted lack of subject matter jurisdiction but failed to specify lack of diversity. The court denied Owen Equipment's motion for leave to file an amended answer.

BRIGHT, Circuit Judge, dissenting.

Regretfully, I am unable to join in Judge Talbot Smith's opinion determining that the district court possessed subject matter jurisdiction over the claims between Kroger and Owen Equipment & Erection Company.

Concededly, the defendant, Owen Equipment, although a Nebraska chartered corporation, maintains its principal business in Iowa, and is, therefore, an Iowa citizen. Congress made clear that for purposes of diversity jurisdiction, a corporation "shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c).

I do not believe that the holding in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), can be said to authorize the exercise of jurisdiction over a claim made by a plaintiff against an impleaded third-party defendant without diversity between the parties. In *Gibbs*, the district court already possessed subject matter jurisdiction over a federal claim between the two parties, so it was appropriate and within the federal court's judicial power to resolve a state claim appended to the federal claim. Here, the threshold question is whether ancillary jurisdiction supports Kroger's claim even though she has no claim against Owen with an independent jurisdictional basis.

I believe that the Supreme Court's pronouncements in *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), and cases such as *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951), require that we dismiss the case for want of jurisdiction.

*Aldinger* was an action brought under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983 against several county officials. The plaintiff attempted to join state law claims against the county itself arising out of the same facts on a theory of pendent or ancillary jurisdiction. The Supreme Court rejected that attempt and with it the sort of reasoning found in the majority opinion.

In response to arguments that "pendent party" jurisdiction over a state law claim should be allowed even in the absence of another claim between the same parties with an independent jurisdictional base, the Court said:

> From a purely factual point of view, it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to *their* federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But *it is quite another thing to permit a plaintiff*, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, *to implead an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction*, simply because his claim against the first defendant and his claim against the second defendant "derive from a common nucleus of operative fact." [*Gibbs*, 383 U.S. at 725, 86 S.Ct. 1130]. True, the same considerations of judicial economy would be served insofar as plaintiff's claims "are such that he would ordinarily be expected to try them all in one judicial proceeding . . . ." *Ibid.* But the addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress. We think there is much sense in the observation of Judge Sobeloff, writing for the Court of Appeals in *Kenrose Mfg. Co. v. Fred Whitaker Co.*, 512 F.2d 890, 894 (CA 4 1972):
>
> > "The value of efficiency in the disposition of lawsuits by avoiding multiplicity may be readily conceded, but that is not the only consideration a federal court should take into account in assessing the presence or absence of jurisdiction. Especially is this true where, as here, the efficiency plaintiff seeks so avidly is available without question in the state courts."

[427 U.S. at 14–15, 96 S.Ct. at 2420 (emphasis added).]

The situation is the same here. That the same facts may have been involved in Kroger's claim against Owen as those in Kroger's claim against the Omaha Public Power District is not by itself sufficient basis for ancillary or pendent jurisdiction over the claim against Owen. Had Kroger wished to sue both Owen and the Power District in a single forum, she could have done so in a state court. *See Fawvor v. Texaco, Inc.*, 546 F.2d 636, 640–41, 643 (5th Cir. 1977). *Aldinger's* reliance on *Kenrose Mfg. Co. v. Fred Whitaker Co., supra*, 512 F.2d 890, which also involved an attempt by a plaintiff in a diversity case to assert state law claims against a nondiverse third-party defendant is especially instructive.

The majority in distinguishing *Aldinger* fails to address the rationale for disclaiming federal jurisdiction presented in *Aldinger*:

> Before it can be concluded that such jurisdiction exists, a federal court must satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence. [*Id.* at 18, 96 S.Ct. at 2422.]

As *Aldinger* makes clear, 427 U.S. at 15–16, 96 S.Ct. 2413, *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), explicates the federal courts' power under article III in the face of congressional silence. *See also* Comment, *Aldinger v. Howard and Pendent Jurisdiction*, 77 Colum.L.Rev. 127, 128–30, 140–42 (1977). *Gibbs* does not deal with the issue before us, for here the Congress expressly limits by statute, 28 U.S.C. § 1332, the parties to which diversity jurisdiction extends.

Since *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), it has been the rule that general diversity jurisdiction over a state law claim requires *complete* diversity between plaintiffs and defendants. The parties to this claim do not satisfy this requirement. Congress has commanded that diversity jurisdiction not extend to claims involving parties such as these. *See Fawvor v. Texaco, Inc., supra*, 546 F.2d at 638–39; Comment, *supra*, 77 Colum.L.Rev. at 147.[41] As Judge Smith correctly observes, *supra* at 422 and 423 n. 25, citing *Fawvor v. Texaco, Inc., supra*, 546 F.2d 636, and *Kenrose Mfg. Co. v. Fred Whitaker Co., supra*, 512 F.2d 890, the majority of federal courts support the view that an independent basis of jurisdiction is necessary to support a plaintiff's action against a third-party defendant. It also appears that we are the first court of appeals to rule to the contrary. In addition to the cases cited by the majority, *see Saalfrank v. O'Daniel*, 533 F.2d 325 (6th Cir.), *cert. denied sub nom. Saalfrank v. Parkview Mem. Hosp.*, 429 U.S. 922, 97 S.Ct. 319, 50 L.Ed.2d 289 (1976); *Rosario v. American Export-Isbrandtsen Lines, Inc.*, 531 F.2d 1227, 1233 & n.17 (3d Cir.), *cert. denied sub nom. Rosario v. United States*, 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976). Thus, I would conclude that Congress did not intend that federal courts take jurisdiction over a plaintiff's claim against a third-party defendant, in the absence of independent jurisdictional grounds.

I agree with Judge Smith's critical comments relating to Owen's concealment of the facts concerning diversity until well into the trial. However, it is well settled that a party cannot by his conduct be precluded through laches, waiver, or estoppel from raising a lack of federal subject matter jurisdiction. *See, e. g., American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951) (party who removed case

---

**41.** A congressional intent to negate pendent jurisdiction cannot be inferred from the majority of jurisdictional statutes, which are intended as affirmative grants of jurisdiction only. Some jurisdictional statutes, however, evince a congressional decision that certain claims should not be heard in federal court. The federal question and diversity statutes, in particular, require that the claims exceed $10,000, and, in the diversity statute, that the parties be of diverse citizenship. The policies which called for the exclusion of claims not meeting these requirements also seem to demand that they not be heard through the exercise of pendent jurisdiction. Since Congress excluded these claims from federal jurisdiction, their adjudication through pendent jurisdiction seems clearly to frustrate congressional intent. [77 Colum.L. Rev. at 147 (footnotes omitted).]

to federal court, and successfully resisted plaintiff's attempts to have it remanded, can raise want of jurisdiction after verdict for plaintiff); *Mitchell v. Maurer*, 293 U.S. 237, 55 S.Ct. 162, 79 L.Ed. 338 (1934) (party never raised lack of jurisdiction in any court); *Mansfield, C. & L. M. Ry. v. Swan*, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884) (same as *Finn, supra*). That counsel for defendant played fast and loose with the court calls for sanctions by the court against the responsible parties, not the exercise of jurisdiction which the federal court does not otherwise possess. *See Mansfield, C. & L. M. Ry. v. Swan, supra*, 111 U.S. at 386–89, 4 S.Ct. 510; *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 910 (10th Cir. 1974); *Page v. Wright*, 116 F.2d 449, 454–55 (7th Cir. 1940).

When a litigant's attorney has intentionally misled the court as to the jurisdictional facts and thus "sandbags" his opponent and the district judge, as appears to be the case here, the court possesses ample power to impose appropriate sanctions against the malefactor. Under somewhat similar circumstances, the Tenth Circuit dismissed the plaintiff's cause for lack of diversity, but directed that "all reasonable costs and expenses should be assessed against defendant including a reasonable attorney's fee for work on this appeal." That court also noted the existence of a state "savings statute" which would permit the plaintiff to pursue a remedy in state court after the federal dismissal, despite the passage of the usual limitations period for the type of action involved. *Basso v. Utah Power & Light Co., supra*, 495 F.2d at 910–11.

Similarly, I would remand this case to the district court with directions to dismiss the action for want of subject matter jurisdiction, leaving plaintiff free to pursue her remedy in the Iowa state courts.[42] Moreover, on remand, I would direct the district court to conduct a hearing relative to imposing sanctions against defendant or defendant's counsel, or both. If found appropriate, those sanctions may include all costs and expenses incurred by plaintiff, Geraldine Kroger, in pressing the action against Owen Equipment and may include a reasonable sum for attorneys' fees for services, pretrial, trial, and on this appeal.

In sum, while I disagree with the majority's disposition of this appeal, I emphatically agree that a drastic remedy is necessary to deter other litigants from engaging in concealment and delay in presenting known jurisdictional facts to the court by the party in possession of those facts in order to obtain an advantage in the conduct of litigation at the expense, not only of the opposing party, but of the court itself. Such conduct substantially hinders the proper and efficient administration of justice and wastes the time of judges, court personnel, and juries in the already overburdened federal courts. This dissenter suggests that such sanctions may be a more appropriate remedy for the abuse practiced in this case than opening the door to even more diversity cases than those already competing for judicial attention on the crowded dockets of the federal courts, particularly when state courts can dispose of all the state law claims involved in such cases. *See Ayoub v. Helm's Express, Inc.*, 300 F.Supp. 473 (W.D. Pa.1969).

---

**42.** I do not agree with the district court's conclusion that if this action is dismissed for lack of jurisdiction, Kroger will be barred from all relief by the statute of limitations. Iowa Code Ann. § 614.10 (West), provides that

If, after the commencement of an action, the plaintiff, for any cause except negligence in its prosecution, fails therein, and a new one is brought within six months thereafter, the second shall, for the purposes herein contemplated, be held a continuation of the first. The facts of this case appear to bring it within this savings provision.